STATE of Missouri, Respondent,

v.

Maxwell JOHNSON, Appellant.

No. 55792.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 11, 1991.

Richard P. Hereford, Asst. Public Defender, Clayton, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

Appellant Maxwell Johnson appeals after a jury trial from his convictions of one count of having under his control cocaine, a controlled substance under Schedule II, Section 195.020 RSMo 1986 (repealed 1989) and one count of receiving stolen property, Section 570.080 RSMo 1986. He was sentenced as a Class X and prior and persistent offender to a term of twenty years imprisonment on the controlled substance count, and fifteen years imprisonment on the stolen property count to run consecutively.

Since defendant contests the sufficiency of the evidence in one of his four points on appeal, we consider the facts and all reasonable inferences in the light most favorable to the verdict and reject all contrary evidence and inferences. *State v. Spiller*, 778 S.W.2d 825, 826[1] (Mo.App.1989).

In March of 1988, defendant resided at 211 Meacham, Kirkwood, Missouri, with the following individuals: Celeste Johnson, his mother; Linda Johnson, his sister; Trate and Albert Johnson, his nephews; and Henderson Woods, Celeste Johnson's live-in companion. In early March, police officers received information from a confidential informant that cocaine and stolen property were present at defendant's residence. In response to this information, the police obtained a search warrant and searched the house on March 3, 1988.

Prior to the search, the informant sketched a map of the interior of the house, indicating to the police which room was defendant's bedroom. Detective Thomas Lacey, immediately upon entry to search the house, verified the informant's sketch by asking the location of defendant's bedroom. Defendant's mother directed the police to the same room the informant indicated in his sketch.

On top of a dresser in that room, the police found a cigar box containing forty-eight folded packets of a white powdery substance which subsequent drug analysis testing showed to be cocaine. A bottle labeled "inositol" and an Excedrin bottle were also sitting on top of the dresser. According to laboratory analysis, both bottles contained inositol, a white powdery substance commonly used as a mix with cocaine.

In a box inside the top dresser drawer, the police discovered twenty-two additional packets of a white powdery substance which later laboratory testing also proved to be cocaine. Seeds, identified by forensic scientist Bryan Hampton to be marijuana seeds, and a letter, addressed to defendant at 211 Meacham, were also found in the drawer. In addition, the police found fifteen bags of vegetative matter, later tested and proven to be marijuana, in the pocket of a jacket lying on his bedroom floor. The evidence at trial established that this jacket was not owned by defendant.

As the search was in progress, defendant stepped out of a closet in his bedroom. He had been hiding under a pile of clothes in the closet for approximately thirty to forty-five minutes. When defendant exited the closet, he was holding a fistful of money. Defendant also had a coin purse filled with

money in his front pocket. The money totalled seven hundred seventy-four dollars.

An antique gun was found on the top shelf of the closet where defendant had hidden. The police also discovered an RCA 100 color television set in the bedroom. Both items were identified as items reported stolen during a burglary of the residence of Mr. Richard Roundtree of Wentzville, Missouri. During trial, Mr. Roundtree identified both the television set and gun as items stolen from his home on January 15, 1988. The television set had his wife's driver's license number engraved on its surface. Mr. Roundtree testified that the antique gun was a collector's item, valued at five hundred dollars or more.

Three triple-beam scales were also discovered in the bedroom. One scale was found inside the top dresser drawer where the marijuana seeds, twenty-two packets of cocaine, and the letter addressed to defendant were discovered. The other two scales were on the top shelf of the closet where defendant had hidden. Other items found in the bedroom included a razor which appeared to have a white powder on its blade and a spoon, called a "coke-spoon", used to ingest or separate amounts of cocaine. The spoon also had a white powdery substance on its surface.

An entrance to the attic was discovered immediately outside of the bedroom. Inside the attic entrance, the police found a purple Crown Royal bag. A plastic bag containing a white powdery substance, subsequently tested and proven to be cocaine, was inside the purple bag.

Defendant raises four points on appeal contending that the trial court erred in: (1) permitting the prosecution to introduce, over his objection, evidence regarding marijuana that was seized during the police search that also yielded the cocaine that defendant was charged with possessing. In particular, he contends introduction of the marijuana violates the rule against admissibility of evidence of other crimes unconnected with the offense on trial; (2) overruling his objection and request for a mistrial when the state made an indirect reference to defendant's failure to testify, thereby implying that his silence was suggestive of guilt; (3) denying his motion for acquittal at the close of the state's case and at the close of all the evidence because there was insufficient evidence to sustain a conviction; and (4) allowing the state to amend the information in lieu of indictment on the day of trial. We affirm.

■ For the sake of clarity, we discuss defendant's points in a different order than presented in his brief. Initially, we consider defendant's third point that the trial court erred in denying his motion for a judgment of acquittal at the close of the state's case and at the close of all the evidence because the evidence was insufficient to support a verdict. We note that because the defendant presented evidence in his own behalf after the state rested, he waived any claim of error as to the court's denial of his motion for a judgment of acquittal at the close of the state's case. *State v. Davis*, 753 S.W.2d 25, 27 (Mo.App. 1988). Accordingly, we will consider only the denial of defendant's motion for acquittal at the close of all the evidence.

■ Defendant asserts the evidence was insufficient to sustain a conviction on Count I, having under his control cocaine, because there was insufficient proof that he exercised any control over the cocaine police seized during the search. In reviewing the sufficiency of the evidence, the function of this court is not to weigh the evidence, but only to determine whether there is sufficient evidence from which reasonable persons could find guilt. *State v. Barber*, 635 S.W.2d 342, 343[1] (Mo.1982).

■ Actual, physical possession of a controlled substance is not required to establish the element of control. *State v. Corley*, 628 S.W.2d 380, 382[4] (Mo.App. 1982). Rather, constructive possession proven by means of circumstantial evidence may suffice. *Id.* Exclusive control of the premises on which controlled substances are found raises an inference of possession and control of those substances. *State v. Moiser*, 738 S.W.2d 549, 558[9] (Mo.App. 1987). Even where joint control exists,

constructive possession will suffice so long as there is other evidence to connect defendant to the drugs. *Id.*

Here, the record reveals that defendant was not in actual, physical possession of cocaine when arrested. Defendant occupied the residence at 211 Meacham with several others at the time of the search. He did not exercise exclusive control over the premises where the cocaine was discovered. Because neither actual possession nor exclusive control were evident, the question then becomes whether, in addition to defendant's joint access to the premises, further evidence establishes defendant's control of the cocaine.

Additional evidence which may suffice to connect defendant to the cocaine includes: mixture of personal belongings with the substance, *State v. Dethrow*, 674 S.W.2d 546, 550[7] (Mo.App.1984); routine access to an area where controlled substances are kept, *State v. Keeper*, 787 S.W.2d 887, 890[6] (Mo.App.1990); and a defendant's flight or attempt to evade capture upon realizing the presence of police, *State v. Kerfoot*, 675 S.W.2d 658, 662[10] (Mo.App. 1984).

In *Dethrow*, 674 S.W.2d at 546, a police search of Dethrow's residence revealed controlled substances inside a jewelry box. The box also contained a traffic ticket issued to Dethrow, an insurance check payable to Dethrow, and jewelry owned by Dethrow and another individual. This court found that defendant's belongings mixed with the drugs was sufficient to establish the element of control. *Id.* at 550.

As in *Dethrow*, defendant's personal belongings were mixed with the controlled substance. Police discovered a letter addressed to defendant in the same drawer as the cocaine. Marijuana seeds were also found in the drawer. Although, under *Dethrow*, this evidence alone is sufficient to establish defendant's control over the cocaine, additional evidence exists which links defendant to the controlled substance. Defendant had routine access to the area where the cocaine was primarily discovered. Both the confidential informant and

Celeste Johnson, defendant's mother, identified the room where the cocaine was found as defendant's bedroom. Moreover, even if the room where the drugs were discovered was the family room, as defendant argues in his brief, it is clear that defendant had routine access to the area. *See Keeper*, 787 S.W.2d at 890. Defendant also attempted to evade the police by hiding under a pile of clothes in the closet for approximately thirty to forty-five minutes after the police search began. *See Kerfoot*, 675 S.W.2d at 662[10]. We find there was sufficient evidence to support defendant's conviction. Point is not meritorious.

■ Next, we address defendant's fourth point, in which he asserts the trial court erred by allowing the state to amend the information in lieu of indictment on the day of trial. He argues the amendment denied him of his right to due process, equal protection, and a fair and impartial jury.

After voir dire of the jury panel, the trial court granted the state's request to amend the information in three respects. First, the charge against defendant in Count I was amended to having under his control cocaine, as opposed to possession of cocaine. This amendment charged defendant with the same offense as the original information but changed the statutory method by which the offense was allegedly committed. Second, the language "and others acting together" was deleted from Count I. Finally, the list of stolen property defendant was charged with receiving in Count II was amended from "a *rifle, a* camera, and an RCA television set" to "a *gun, two* cameras, and an RCA television set." A second amendment to the information, which is not at issue and accordingly not addressed here, deleted "two cameras" from the amended list of stolen property.

Rule 23.08 states that "[a]ny information may be amended ... at any time before verdict ... if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced." Defendant concedes that the amended information does not charge an additional or different offense; rather, he

claims he was prejudiced by the amendment.

■ Prejudice occurs after an information is amended only if defendant's evidence would not be equally applicable, nor his defense equally available, after the amendment to the information. *State v. Moton*, 733 S.W.2d 449, 451[1, 2] (Mo.App. 1986). Defendant does not allege that the amendment altered the availability of his defense nor the applicability of his evidence. Rather, he asserts that by allowing the amendment after voir dire, he was prejudiced because he was denied the opportunity to pose certain exploratory questions to the jurors as to the meaning of the statutory term "under his control."

Defendant suffered no prejudice from this amendment under *Moton* or Rule 23.08 because his defense, that the room where the cocaine was discovered was not his bedroom, was equally available before as after the amendment to the information. Also, the amendment in no way altered the factual allegations against defendant nor charged him with an additional or different offense. *See State v. Bratton*, 779 S.W.2d 633, 635[2] (Mo.App.1989) where the alteration of defendant's anticipated closing argument, resulting from an amendment to the information, is not a "substantial right" contemplated by Rule 23.08.

Moreover, the record reveals that defense counsel was provided a copy of the amended information, with all pertinent changes, before voir dire was conducted. If the defense wished to pose exploratory questions as to the meaning of "under his control," this could have been attempted in accordance with the amended information. Point denied.

■ We next address defendant's first point, which asserts the trial court erred when it admitted, over defendant's objection, evidence of marijuana seized during the search. Defendant contends that introduction of the marijuana into evidence, in particular the marijuana found in a jacket in defendant's bedroom, violates his right to be tried solely for the crimes of which he stands accused.

■ As a general rule, evidence of a separate crime is inadmissible unless it has a legitimate tendency to establish the defendant's guilt of the crime for which he is being tried. *State v. Bannister*, 680 S.W.2d 141, 146–7[13] (Mo. banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1984); *State v. Pernell*, 606 S.W.2d 389, 391[1] (Mo.App.1979). A well-settled exception is that evidence of other crimes is admissible to prove the specific crime charged when it tends to establish the defendant's requisite intent. *State v. McIntyre*, 735 S.W.2d 111, 112[1] (Mo.App. 1987); *Pernell*, 606 S.W.2d at 391. Here, the state has the burden of proving that defendant had knowledge of the nature of the cocaine and that he knowingly and intentionally had it under his control. *Barber*, 635 S.W.2d at 343[2].

Defendant does not dispute these well-established rules of law, but instead argues that the marijuana evidence does not fall within the intent exception to the general exclusionary rule. In *State v. Williams*, 539 S.W.2d 530 (Mo.App.1976), police officers searched the defendant's apartment and discovered quantities of heroin on top of a dresser in Williams' bedroom. The search also revealed three one pound bricks of marijuana lying on a table. The defendant was subsequently charged only with possession of heroin. At trial, the state was allowed to introduce the marijuana into evidence because such introduction was proper to establish knowing possession of the heroin and knowledge of its illegal character. In response to Williams' argument that admission of the marijuana was prejudicial, this court stated:

> Although proof of possession of marijuana is not ipso facto evidence of knowing possession of heroin, where the two controlled substances ... are found at the same time and in the same place in open view, it has a logical tendency to prove a material fact at issue, that is, knowing possession.

*Id.* at 534–5[7, 8].

Defendant argues that *Williams* is distinguishable from his case. Specifically, he asserts that, unlike *Williams*, the marijuana was discovered neither in the same place nor in open view and, as a result, the trial court erred in admitting the marijuana.

Here, the marijuana in the jacket (in addition to marijuana seeds in the dresser drawer) and cocaine were found in the same place, i.e., defendant's bedroom. The marijuana was discovered during a search pursuant to a valid search warrant. Hence, the fact that the marijuana was not found "in open view" is not a requirement as to its admissibility. *See State v. Hall,* 687 S.W.2d 924, 929[11, 12] (Mo.App.1985). The marijuana was properly admitted despite the fact that its presence may also prove another crime. Point denied.

Finally, we address defendant's second point on appeal, wherein he contends the prosecutor made an indirect reference to his failure to testify and that, as a result, the trial court erred in denying his motion for a mistrial.

It is well-settled that a prosecutor may not refer to a defendant's failure to testify. Rule 27.05. *State v. Sidebottom,* 753 S.W.2d 915, 920[6, 7] (Mo. banc 1988), *cert. denied,* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). An indirect reference to a defendant's failure to testify is a comment which, when viewed in context, would cause the jury to infer that the remark referred to the defendant's failure to testify. "The ultimate question is whether the remark drew the jury's attention to the lack of testimony by defendant." *State v. Hill,* 678 S.W.2d 848, 850[4–6] (Mo.App. 1984). An indirect comment is improper only if there is a calculated intent demonstrated by the prosecutor to magnify a defendant's decision not to take the stand. *State v. Lawhorn,* 762 S.W.2d 820, 826[7, 8] (Mo. banc 1988).

The question of whether the state had proven that the defendant *knew* he had cocaine under his control was a primary issue argued during closing argument. In closing, defense counsel stressed that the burden is on the state to prove beyond a reasonable doubt that defendant knowingly had control over the cocaine. In response, the state argued that the presence of the marijuana established defendant's knowledge of the cocaine. For example, the prosecutor stated, "[Defendant] is aware of the drugs. He possesses drugs, the marijuana seeds and the other things in the drawer. So he knew it was cocaine."

Shortly after this statement, the prosecuting attorney stressed what was at issue in the case. The prosecutor argued that the issue of whether the room in which the police discovered the cocaine was defendant's bedroom was a minor issue. Also, the prosecutor emphasized that there was no issue as to whether the substance discovered in defendant's bedroom was cocaine. He further stressed that the validity of the search warrant was not at issue. The prosecutor then made the statements about which defendant now complains: "We are trying to get justice in this case, and there is no one that knows that better than the defendant over there. Nobody knows that better than him. That was his coke."

Viewing the prosecutor's statement in context, we find that the statement was not an indirect reference to defendant's failure to testify. In our view, the statement merely directed the jury's attention to the primary issue being argued during closing, that issue being whether defendant *knowingly* had cocaine under his control. Moreover, even if the prosecutor's statement was construed by the jury as an indirect reference to defendant's silence, the statement was not improper. There is no indication of a "calculated intent" by the prosecutor to emphasize defendant's failure to take the stand. Instead, the record reveals that the prosecutor's intention was to stress the strength of the state's case. When asked by the trial court, out of the jury's hearing, whether he had any comment on defense counsel's objection to his statement, the prosecutor stated, "I made no reference to [defendant's failure to testify] whatsoever. I was making reference to the strength of the state's case. I did not, nor was I planning on making reference to the defense, the defendant['s] testifying or taking the stand...." Point denied.

Judgment affirmed.

CRIST and GARY M. GAERTNER, JJ., concur.